CLAUDE DUBOIS EXCAVATING, INC.

v.

TOWN OF KITTERY.

Supreme Judicial Court of Maine.

Argued Sept. 24, 1993.
Decided Dec. 15, 1993.

interpretation.

Kurt E. Olafsen (orally), Portland, for plaintiff.

Duncan A. McEachern (orally), McEachern & Thornhill, Kittery, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS, RUDMAN and DANA, JJ.

CLIFFORD, Justice.

Claude Dubois Excavating, Inc. (Dubois) appeals from a summary judgment entered in the Superior Court (York County, *Brennan, J.*) for the Town of Kittery in Dubois's suit against the Town for breach of a contract. Finding no error, we affirm the judgment.

In 1988 the Town awarded Dubois a contract for the so-called Badger's Island sewer project, that involved construction of sewers serving the Badger's Island area of the Town, as well as sewers for five additional "collector streets." Although Dubois submitted the low bid on this project ($847,300), the contract itself did not involve paying Dubois a fixed price for its work. Rather, this was a unit price contract in which the Town agreed to pay Dubois a unit price for discrete aspects of the project as proposed in the bid submitted by Dubois on a form supplied by the Town.[1] The $847,300 was actually Dubois's estimated cost of the project based on its unit price bids multiplied by the Town's estimated number of individual units it would require to complete the work. Among the unit prices enumerated in the contract was $140 per cubic yard for the excavation of ledge material.

The Town directed Dubois to begin work by constructing the Badger's Island sewers first. As construction progressed, it became apparent that the Badger's Island phase of the project would require the removal of substantially more ledge than Dubois initially estimated. This had the effect of increasing the cost of the project well beyond the $847,300. The Town's consultant estimated that in light of the actual quantities of ledge that had to be removed, the cost of construction of the *entire* project would exceed by $157,400 the amount authorized by the Town voters in a special bond issue referendum.

After Dubois refused to lower the $140 unit price for ledge excavation, the Town advised Dubois that it was deleting the sewers for the collector streets from the project. Dubois then filed suit in the Superior Court seeking costs and lost profits[2] on a breach of

---

1. For example, Dubois agreed to a unit price of $30 per linear foot of eight-inch PVC sewer pipe, $20 per linear foot of six-inch house connection pipe, $200 per four-foot sewer manholes, $200 per standard manhole frame and cover, $30 per cubic yard for "excavation of unsuitable material below grade and replacement with compacted approved material," and $5 per cubic yard of sand and gravel. Altogether, the contract contained twenty-two separate items for which Dubois submitted a unit price. Some of the unit bids amounted to a lump sum for a discrete segment of the project, as completed. For example, Dubois agreed to the price of $30,000 "[f]or all work constructing the 4-inch preinsulated

sewer on the Badger's Island Bridge." None of the "lump sum" items in the contract are at issue.

2. According to Dubois, it bid $140 per cubic yard for excavation of ledge even though its actual cost of this excavation would exceed $140 per cubic yard for the completed Badger's Island phase of the project. Dubois maintains that all of its profits on the ledge excavation were to derive from the part of the project that was deleted, because the actual cost of ledge excavation in the collector streets area would be only $80 per cubic yard.

contract claim.[3] The Town moved for a summary judgment, relying in part on the contract language giving the Town the right to reduce the quantity of the work. This appeal by Dubois followed the Superior Court's entry of a summary judgment in favor of the Town.

█ When reviewing a trial court's decision to grant a summary judgment, we view the facts in the light most favorable to the nonmoving party and determine whether the court erred as a matter of law. *Chasse v. Mazerolle,* 622 A.2d 1180, 1182 (Me.1993). In the absence of allegations that the contract between the parties is ambiguous, interpretation of the contract is a question of law rather than fact. *F.O. Bailey Co. v. Ledgewood, Inc.,* 603 A.2d 466, 468 (Me.1992). We agree with the Town that the language of the contract governing reduction in quantities unambiguously gives it the right to delete the uncompleted phase of the project, as it did here. That provision reads as follows:

> The [Town] reserves the right to decrease the quantity of work. Should such reduction be made in the quantities of work originally called for, the Contractor shall have no claim for loss of anticipated profits for that portion of the work omitted. Unit prices, where prescribed in the Contract, shall apply without change to any reduction in the quantity of the items.

Dubois argues that the parties never intended this language to embrace such a wholesale reduction in the scope of the project.

Dubois urges us to apply the reasoning in *DeKalb County v. Beacon Indus.,* 187 Ga. App. 370, 370 S.E.2d 191 (1988), in which the Georgia Court of Appeals ruled that inter-preting contract language governing reduction of quantities to give the purchaser "the unilateral right to reshape the entire scope of the Project" would render the entire contract void for lack of consideration. *Id.* 370 S.E.2d at 193. The *DeKalb* court found that the contract at issue in that case, which divided a water main project into 28 units, gave the defendant the right to increase or decrease the quantities of work and material only within each work unit. *Id.* The contract in this case, however, sets a rate at which Dubois was to be compensated for the completion of certain tasks or the installation of certain items, and sets forth an "estimated quantity total" for each task or item. To apply the rationale of *DeKalb* to the instant case would require us to construe the contract as limiting the Town's right to decrease the quantity of work and material only within each manhole cover installed or cubic yard of ledge excavated. We decline to adopt a construction of the contract so contrary to its language. Moreover, it is undisputed that Dubois was entitled to be paid in full for all the work performed pursuant to the contract, so it is not necessary for us to strain, as the *DeKalb* court did, to interpret the contract so as to find valid consideration.[4]

█ We also decline the invitation of Dubois to apply the so-called "cardinal change" doctrine to this contract. As developed by the federal courts, this doctrine protects a government contractor from being subject to "duties materially different from those originally bargained for." *General Dynamics Corp. v. United States,* 585 F.2d 457, 462, 218 Ct.Cl. 40 (1978). *General Dynamics* in-

**3.** Dubois separately alleged that the Town was estopped from unilaterally deleting work from the contract. Dubois has not pursued its estoppel theory on appeal.

**4.** In deleting the collector streets from the project, the Town also relied on an additional provision of the contract entitled "Change of Work," that reads:

> The [Town's consulting] Engineer shall have the right to change the work without making the Contract invalid. Any alterations resulting in Extra Work, however, must have the prior written consent of the [Town]. The [Town's consulting] Engineer may make alterations on the line, grade, plan, form, dimensions or ma-terials of the subject matter of the contract, or any part thereof, either before or after the commencement of the justifiable claim for Extra Work.... Where such alterations diminish the quantity, quality, or standard of the work to be done, the adjustment shall be made on the basis of unit prices with no claim for loss of anticipated profits on that portion of the work omitted.

Because we conclude that the Town had the right to reduce the quantity of work pursuant to the "reduction in quantities," we do not address whether the "change of work" language would also allow the Town to delete part of the work of the contract.

volved the Navy's effort to impose costly modifications to submarines then under construction, in light of the loss of a Navy submarine at sea, without additional compensation to the contractor. *Id.* 585 F.2d at 459–60. Given the language permitting the Town to diminish the quantity of work in the contract with Dubois, we cannot say that eliminating the sewers for the collector streets was "not within the general scope of the contract." *Id.* at 462.

■ Finally, we reject Dubois's argument that the Town has breached an implied duty of good faith. As the Town notes, we have not adopted an implied duty of good faith as a matter of general contract law, and, in the absence of any evidence that the Town acted in bad faith in its dealings with Dubois, we decline to recognize such a duty here.

The entry is:

Judgment affirmed.

All concurring.